**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **AMBER D. DANIELS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 11 C 2246** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | **Magistrate Judge Morton Denlow** |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Amber D. Daniels ("Claimant") brings this action under 42 U.S.C. § 405(g),

seeking reversal and remand of the decision by Defendant Michael J. Astrue, Commissioner

of Social Security ("Defendant" or "Commissioner"), denying Claimant's application for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Claimant

raises the following issues: (1) whether the ALJ properly considered the opinions of

Claimant's treating physician; (2) whether the ALJ set forth a record basis for her finding that

Claimant can perform sedentary work; (3) whether the ALJ complied with the requirements

of Social Security Ruling ("SSR") 96-8p in her determination of Claimant's residual

functional capacity ("RFC")[1]; (4) whether the ALJ's credibility finding regarding Claimant's

testimony was patently wrong; (5) whether the ALJ applied the wrong Medical-Vocational

---

[1]The RFC is the most that a claimant can still do despite her limitations. 20 C.F.R. §
404.1545(a)(1).

Guideline by misidentifying Claimant's age-category and that error materially impacts the case; and (6) whether the ALJ reasonably found that Claimant possessed the requisite transferability of skills. For the following reasons, the Court grants Claimant's motion for summary judgement to reverse the decision of the Commissioner, denies the Commissioner's motion to affirm the Commissioner's decision, and remands the case to the Social Security Administration for further proceedings consistent with this opinion.

## I. BACKGROUND FACTS

### A.   PROCEDURAL HISTORY

Claimant initially applied for DIB and SSI on September 19, 2006, alleging a disability onset date of August 17, 2006. R. 56-57. The Social Security Administration ("SSA") denied her applications on November 28, 2006. R. 60-63. Claimant then filed a request for reconsideration, which the SSA denied on January 17, 2007. R. 64-71. Thereafter, Claimant requested a hearing before an ALJ. R. 72.

On April 2, 2009, Administrative Law Judge Janice M. Bruning ("ALJ") presided over a hearing at which Claimant appeared with her attorney, Andrew Barone. R. 26-55. Claimant and Thomas Guswald, a vocational expert ("VE"), testified at the hearing. R. 27. On May 14, 2009, the ALJ issued a decision finding Claimant not disabled under the Social Security Act. R. 14-25. Specifically, the ALJ found Claimant has the residual functional capacity to lift ten pounds occasionally and less than ten pounds frequently; stand and/or walk for about two hours in an eight hour workday; and sit for about six hours in an eight hour workday, with a sit/stand option at will. R. 21-23. Further, the ALJ determined that

Claimant "has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." R. 24.

Claimant then filed for review of the ALJ's decision to the Appeals Council, which denied Claimant's request on February 4, 2011. R. 1-3. Therefore, the ALJ's decision became the final decision of the Commissioner. Claimant subsequently filed this action for judicial review pursuant to 42 U.S.C. § 405(g). The parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c). Dkt. 10.

## B. HEARING TESTIMONY - APRIL 2, 2009

### 1. Amber Daniels - Claimant

Claimant's date of birth is July 14, 1952. R. 105. Therefore, she was fifty-six years old at the time of the hearing. Claimant has completed education through the eleventh grade. R. 29. Claimant receives assistance from the State of Illinois[2] and lives with her mother. R. 30.

Claimant's most recent employment as a teacher aide and cook ended in August 2006. R. 115. Claimant testified that she stopped working because she "just couldn't work" and quit her job at the school because she "was out more than [she] was there, for lack of sleep." R. 32, 47. In addition to Claimant's experience as a teacher aide and cook, Claimant's prior work experience included housekeeping and secretarial work at a hospital. R. 32.

Claimant testified that she is able to sit for twenty to twenty-five minutes. R. 35-36.

---

[2]Plaintiff testified that she has an Illinois Link card. The State of Illinois issues Link Cards to approved applicants who receive cash assistance or SNAP (Food Stamps) benefits. Illinois Department of Human Services, Illinois Link Card, http://www.dhs.state.il.us/page.aspx?item=30371 (last visited Feb. 2, 2012).

At that point, she has to stand up. *Id.* She is able to stand for fifteen to twenty minutes before she has to sit down. R. 35. Her balance is sometimes off, though she does not use a cane or other assistive device. R. 36. Claimant noted that her feet and legs swell at times. R. 42-43. Her blood pressure fluctuates which results in dizziness two to three times per month. R. 43-44. Claimant also experiences dizziness when she bends down. R. 45. Claimant testified that she is able to walk a block and climb the stairs to get to her first floor apartment, but has difficulty bending, reaching overhead, and reaching in front of herself. R. 36-37. Claimant testified that she is able to lift five pounds. R. 36. She also has difficulty using her hands to pick items up because her hands shake due to lack of sleep. R. 37. Claimant asserted that she has problems with gout. *Id.*

While Claimant has difficulty getting in and out of the bathtub, she is physically able to wash dishes, straighten her bed, take public transportation, buy groceries, do laundry, take out the garbage, and cook and care for her mother. R. 38-39, 41. Claimant also testified that she watches television "basically all night," socializes with family and friends, and attends church and Bible study each week. R. 39-40.

According to Claimant, she is depressed because of her sleep apnea. R. 41. She is taking Lexapro and Ativan for her depression. *Id.* Claimant testified that she has difficulty sleeping and sleeps on the floor with a CPAP machine. R. 45-46.

### 2.     Thomas Guswald - Vocational Expert

Thomas Guswold testified as a vocational expert. R. 48. The VE noted that

Claimant's position as a school cafeteria cook was a medium demand, skilled position with a Specific Vocational Preparation ("SVP")[3] of six. R. 49. Claimant also worked as a teacher aide, which the VE categorized as a light demand, semiskilled position with an SVP of three. *Id.* Claimant's experience as a housekeeper for a hospital was a light demand, unskilled position with an SVP of two. R. 49-50. Finally, the VE testified that Claimant's former position as an administrative clerk was a light demand, semiskilled position with an SVP of four. R. 50.

The VE testified that Claimant's acquired job skills include verbal and numerical recording, record keeping, and information given. R. 50. According to the VE, these skills are transferrable to sedentary semiskilled work such as: a hospital admitting clerk, of which there are 4450 jobs; appointment clerk, of which there are 34,070 jobs; or diet clerk, of which there are 70,300 jobs.[4] *Id.* The VE noted that very little vocational adjustments would be required because Claimant's acquired skills are rated as the highest transferable so the adjustment would be limited to familiarity with the job. R. 50.

The ALJ presented the VE with a detailed hypothetical person of Claimant's age,

---

[3]An SVP classifies how long it would normally take for particular work to be learned to a level of average performance. An SVP of six indicates that the work can normally be learned within one to two years. "Dictionary of Occupational Titles" http://www.occupationalinfo.org/appendxc_1.html#II (last visited Mar. 29, 2012).

[4]The VE testified that a hospital admitting clerk is in a category of interviewing clerks, of which there are 4450 jobs, that an appointment clerk is in a category of receptionist information clerk, of which there are 34,070 jobs, and that a diet clerk is in a category of a general office clerk, of which there are 70,300 jobs. It is unclear from the record how many jobs are available within the specific subset of the larger category. The ALJ assumed that the numbers are the one and the same in her opinion. R. 24.

education, and work experience. This person could lift twenty pounds occasionally, ten pounds frequently, stand and/or walk six hours during an eight hour work day, sit six hours during an eight hour work day, must avoid exposure to work hazards, heights, and moving machinery, and should never climb ladders, rope, or scaffolding but could occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl. The ALJ included a sit/stand option in this hypothetical. R. 51. The VE opined that this hypothetical person could perform the administrative clerk position. *Id.*.

The ALJ then modified the hypothetical to limit the individual to lifting and carrying only ten pounds occasionally, less than ten pounds frequently, and removed the sit/stand option. With these modifications, the VE testified that the hypothetical person could perform all of the sedentary, semi-skilled jobs listed above (hospital admitting clerk, appointment clerk, diet clerk). R. 52. With a sit/stand at will option added back into this second hypothetical, the VE testified that the hypothetical person could still perform those semi-skilled sedentary jobs. R. 51-52. However, if the hypothetical person was limited to unskilled work with the same limitations, she would not be able to perform any of the sedentary jobs. R. 52. The VE also testified that the sit/stand option would rule out any work in the light category. R. 53. Finally, in response to questioning by Claimant's attorney, the VE testified that difficulties in maintaining concentration would affect one's ability to perform the sedentary jobs listed. R. 54.

## C. MEDICAL EVIDENCE

### 1. Westlake Hospital - August 7-10, 2005

6

On August 7, 2005, Claimant was admitted at Westlake Hospital because she felt lightheaded and was experiencing dizziness and chest pain. R. 156-81. Testing showed normal pulmonary vascular patterns and clear lung fields. R. 166. A chest x-ray showed that Claimant's heart was minimally enlarged. *Id.* Echocardiography revealed that Claimant's heart had minimal aortic insufficiency of a slight degree and had no other significant abnormality. R. 168. Upon discharge, the attending physician diagnosed Claimant with chest pain, hypotension, and dyslipidemia. R. 181.

### 2. Dr. Forrest J. Robinson - Claimant's Treating Physician

Claimant's medical records date back to September 1964 when she began seeing her physician, Dr. Forrest J. Robinson ("Dr. Robinson"). R.182-228; 232-37; 259-321. The day before her onset date of August 17, 2006, Claimant saw Dr. Robinson because of a constant headache, inability to sleep, and high blood pressure. R. 222. Dr. Robinson prescribed an electrocardiogram. *Id.* The results indicated a borderline left axis deviation and borderline voltage for left ventricular hypertrophy. R. 189.

On August 24, 2006, Claimant saw Dr. Robinson for a blood pressure follow-up. R. 221. Dr. Robinson diagnosed Claimant with severe Stage III hypertension; morbid obesity; and dizziness. *Id.* Claimant canceled or failed to attend her next two scheduled appointments. R. 225-26. Claimant next saw Dr. Robinson on September 18, 2006, for a blood pressure check. R. 224. Dr. Robinson opined in his Progress Notes that Claimant seemed "unstable compared to last visit" and diagnosed Claimant with insomnia; high cholesterol; stress; reactive depression; and possibly obstructive sleep apnea ("OSA"). *Id.*

7

Dr. Robinson referred Claimant for a sleep study on September 20, 2006. R. 191-93. Polysomnography results revealed that Claimant had an OSA that is mild overall but moderate in REM sleep. R. 192. The sleep study physician opined that this is "relatively common during sleep and is not necessarily pathologic." R. 193.

Claimant canceled or failed to attend her next three appointments with Dr. Robinson. On January 23, 2007, Claimant saw Dr. Robinson regarding her problems with poor sleep and fatigue. R. 290. Dr. Robinson diagnosed Claimant with insomnia/OSA; obesity; hypertension; and high cholesterol. *Id.* He prescribed a CPAP machine for Claimant's OSA. In April 2007, Dr. Robinson prescribed an EKG after diagnosing Claimant with generalized fatigue; leg weakness. R. 287-89. Test results revealed Claimant was within normal limits. R. 304, 309.

When Claimant saw Dr. Robinson due to body pain and a leg edema on October 30, 2008, Dr. Robinson ordered a variety of tests. R. 276; 248-58. Thyroid test results dated November 11, 2008 did not indicate that Claimant had any thyroid problems. R. 248-49. Diagnostic ANA screen test results were negative. R. 250. The remaining medical records through February 2009 consist of Dr. Robinson's treatment notes and indicate office visits for: fatigue; obesity; hypertension; OSA; reactive depression; stress; urinary infections; menopausal syndrome; cold symptoms; bronchitis; foot pain; and leg swelling/edema. R. 271, 273-79, 282-84, 287, 289-90, 296-98.

On January 30, 2009, Dr. Robinson completed a Sleep Disorders RFC Questionnaire in which he concluded that Claimant could not carry more than five pounds occasionally and

8

should avoid work that involves mainly standing and walking.  R. 259-62.  Dr. Robinson also determined that Claimant has the following work limitations: should avoid work involving climbing and heights; should avoid power machines, moving machinery, or other hazardous conditions; should limit or avoid operation of vehicles; should avoid work which is not closely supervised; supervisors and/or coworkers must be trained for basic assistance; and may need breaks at unpredictable intervals.  R. 261.

On February 5, 2009, Dr. Robinson completed a Mental Impairments Questionnaire, R. 263-66, in which he opined that Claimant's mental abilities and aptitude to perform unskilled work are either fair or poor/none.  R. 265-66.  Dr. Robinson explained that Claimant's chronic fatigue and labile emotions "all but eliminate her focus [and] concentration for anything."  R. 266.  He also noted that Claimant has: extreme difficulties in maintaining social functioning; marked restriction of activities of daily living; frequent deficiencies in concentration, persistence, and pace; and repeated episodes of decompensation.  *Id.*

### 3. Evaluation by State Agency Physicians

In November 2006, Dr. Francis Vincent, M.D. ("Dr. Vincent"), reviewed the record on behalf of the state agency and diagnosed Claimant with non-severe hypertension.  R. 229-31.  Dr. Vincent found no evidence of end organ damage from Claimant's documented hypertension.  R. 231.

In January 2007, Dr. Robert Patey, M.D. ("Dr. Patey"), reviewed the record on behalf of the state agency and diagnosed Claimant with hypertension and sleep apnea.  R. 238-45.

9

Dr. Patey opined that Claimant could occasionally lift fifty pounds and frequently lift twenty-five pounds. R. 239. Dr. Patey further opined that Claimant could stand and/or walk for about six hours and sit for about six hours in an eight-hour workday. *Id.* Dr. Patey commented that Claimant's hypertension improved with medication and that there was no evidence of any end organ damage due to hypertension. R. 245. Dr. Patey noted that the polysomnography showed mild obstructive sleep apnea syndrome. *Id.*

## D.    THE ALJ'S DECISION - May 14, 2009

Following a hearing and a review of the medical evidence, the ALJ rendered an unfavorable decision upholding the denial of Claimant's application for DIB and SSI. R. 14-25. The ALJ reviewed Claimant's application under the familiar five-step sequential analysis. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since August 17, 2006, the alleged onset date. R. 19. At step two, the ALJ found Claimant had a combination of severe impairments: obesity with sleep apnea and hypertension. *Id.* At step three, the ALJ found Claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R. 21. The ALJ then considered Claimant's RFC and found that Claimant is capable of lifting ten pounds occasionally and less than ten pounds frequently; she can stand and/or walk for about two hours in an eight hour workday; and she can sit for about six hours in an eight hour workday with a sit/stand option at will. *Id.*

In assessing Claimant's RFC, the ALJ considered all of Claimant's symptoms and the extent to which Claimant's medically determinable impairments could "reasonably be

expected to produce the claimant's pain or other symptoms." R. 21-22. This evaluation was based on the medical evidence of record and the Claimant's testimony about her activities of daily living. R. 23. The ALJ found Claimant's impairments could reasonably be expected to cause the alleged symptoms, but that Claimant's statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible." R. 22.

At step four, the ALJ found that Claimant is unable to perform any past relevant work. *Id.* At step five, the ALJ found there are jobs that exist in significant numbers in the national economy that Claimant can perform. R. 24. Thus, the ALJ concluded Claimant is not disabled under the Social Security Act. R. 25.

## II. LEGAL STANDARDS

### A.    STANDARD OF REVIEW

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an ALJ becomes the Commission's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id*. The reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). A "mere scintilla" of evidence is not enough. *Id*.; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when the record contains adequate evidence to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or an adequate discussion of the issues, it must be remanded. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011). It may not, however, "displace the ALJ's

judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence supports the findings. *Id*.

## B.    DISABILITY STANDARD

Disability insurance benefits are available to a claimant who can establish that he is under a "disability" as defined by the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if he is unable to perform his previous work and cannot, considering his age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing other work. *Id*. Once the claimant has proven he cannot continue his past

relevant work due to physical limitations, the ALJ must determine whether other jobs exist in the economy that the claimant can perform. *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008).

## III. DISCUSSION

Claimant raises the following issues in support of her motion: (1) whether the ALJ properly considered the opinions of Claimant's treating physician, Dr. Robinson; (2) whether the ALJ set forth a record basis for her finding that Claimant can perform sedentary work; (3) whether the ALJ complied with the requirements of SSR 96-8p in her determination of Claimant's RFC; (4) whether the ALJ's credibility finding regarding Claimant's testimony was patently wrong; (5) whether the ALJ applied the wrong Medical-Vocational Guideline by misidentifying Claimant's age-category and that error materially impacts the case; and (6) whether the ALJ reasonably found that Claimant possesses the requisite transferability of skills. The Court addresses each in turn.

## A. AN EVIDENTIARY GAP WAS CREATED WHEN THE ALJ DISCOUNTED THE OPINION OF CLAIMANT'S TREATING PHYSICIAN.

An ALJ makes an RFC determination by weighing all the relevant evidence of record. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184 (July 2, 1996). In doing so, she must determine what weight to give the opinion of the claimant's treating physician. 20 C.F.R. § 404.1527. A treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2); *see*

14

*Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010). If the ALJ determines that the opinion is unsupported or inconsistent with the record, the ALJ may reject the opinion but must give "good reasons" for doing so. 20 C.F.R. § 404.1527(d)(2); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010).

When a treating source's opinion is not given controlling weight, the ALJ is to consider a number of factors identified in 20 C.F.R. § 404.1527(d)(2). Those factors include: the length, nature, and extent of the physician and claimant's treatment relationship; whether the physician supported his opinions with sufficient explanations; the consistency of the opinion with the record as a whole; whether the physician specializes in the medical conditions at issue; and any other factors brought to the attention of the ALJ. 20 C.F.R. § 404.1527 (d)(2)-(6). An ALJ must "minimally articulate" her reasons for how much weight a treating source's opinion is afforded after consideration of those factors – a very deferential standard. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (quoting *Rice v. Barnhart*, 384 F.3d 363, 372 (7th Cir. 2004)). Finally, unless a treating physician's opinion is given controlling weight, the ALJ must "explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist." 20 C.F.R. § 404.1527(f)(2)(ii).

In the case at bar, the ALJ did not give controlling weight to Dr. Robinson's opinions. In determining that Dr. Robinson's opinion was not entitled to controlling weight, the ALJ noted "there is no support for [Dr. Robinson's] extremely limited assessment in the treatment

notes or in [Claimant's] activities of daily living" and that medical records do not support his opinions in the Mental Impairment Questionnaire and the Sleep Disorders RFC Questionnaire. R. 23. The ALJ observed that Claimant's test results showed only minimal cardiac enlargement, aortic insufficiency of a slight degree, and that "otherwise no significant abnormality was noted." *Id.* The ALJ further noted that Claimant's sleep study results indicated only a mild obstructive sleep apnea syndrome that is mild overall but moderate in REM sleep. *Id.* The ALJ reiterated that the physician who administered the sleep study opined this was "relatively common during sleep and is not necessarily pathologic" and suggested a cardiac evaluation; previous cardiac testing showed no significant abnormality. *Id.* Further, the ALJ observed that there were no further diagnostic tests, treatment, or physical examination results to support the degree of limitation alleged. *Id.* Thus, the ALJ concluded that Dr. Robinson's assessment in the Sleep Disorders RFC Questionnaire lacked sufficient support.

The ALJ also discredited Dr. Robinson's Mental Impairment Questionnaire assessment because there are "no records of psychiatric or psychologic treatment in the file." R. 20. The ALJ considered the fact that Dr. Robinson had treated Claimant for four years[5], but noted that the frequency of the treatment relationship was "sporadic with many no shows and cancellations." R. 23. While the ALJ may not draw a negative inference based on lack

---

[5]The record indicates that Dr. Robinson was actually Claimant's long time physician. However, when asked about the nature, frequency and length of his contact with Claimant in the Sleep Disorder RFC Questionnaire and the Mental Impairment Questionnaire, he wrote "4 years of interaction for medical Diagnoses & Treatment quarterly visits & as needed" and "Many years 4 years @ least quarterly visits," respectively. R. 259, 263.

of treatment, *Craft*, 539 F.3d at 679, the frequency of treatment is a relevant factor. 20 C.F.R. § 404.1527 (d)(2)(i).

The Court does not find that the ALJ necessarily should have given Dr. Robinson controlling weight, or even significant weight. The ALJ articulated why she declined to give Dr. Robinson controlling weight and the Court does not find error in that analysis. However, once the ALJ discounted Dr. Robinson's opinions, she was left with a record that simply does not support the RFC determination, such as Claimant's ability to "lift 10 pounds occasionally and less than 10 pounds frequently." *See Barrett v. Barnhart*, 355 F.3d 1065, 1066-67 (7th Cir. 2004) (finding reversible error when ALJ determined that claimant could stand for two hours because there was no medical evidence to support such a conclusion).

Without Dr. Robinson's opinions as to Claimant's limitations and restrictions, all that remains of the medical record are the state agency physicians' evaluations, Claimant's hospital admission records, and some test results. Nowhere in her opinion does the ALJ even mention the opinions of the state agency physicians' opinions, nor does she evaluate how much weight to afford those opinions in accordance with Social Security Administration regulations. 20 C.F.R. § 404.1527(f)(2)(ii). Thus, in determining that Dr. Robinson's opinion was not entitled to controlling or even significant weight, the ALJ created a gap in the medical evidence of record.

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to the conclusion," *Berger*, 516 F.3d at 544, and she is not allowed to substitute her own lay opinions to fill an evidentiary gap in the record. *See Blakes v. Barnhart*, 331 F.3d

17

565, 570 (7th Cir. 2003). Once the ALJ determined that Dr. Robinson's opinions were insufficient and unsupported by the medical evidence, the ALJ had a duty to conduct an appropriate inquiry to fill that gap. What the ALJ could not do was fill in the gap on her own. Thus, the Court finds that a remand is necessary due to the evidentiary deficit created by the ALJ's rejection of Dr. Robinson's opinions. *See, e.g.*, *Suide v. Astrue*, 371 Fed. App'x. 684, 690 (7th Cir. 2010) (remanding where ALJ created an evidentiary deficit when the ALJ rejected treating physician's opinion and then made a RFC determination without supporting medical evidence)

In the present case, the ALJ could have—and must on remand—fill in the evidentiary deficit either by seeking further information from Dr. Robinson or obtaining the opinions of an independent examining physician or a medical expert. For example, in *Barnett v. Astrue*, the Seventh Circuit held that where an ALJ was concerned with the lack of backup support for a long-term treating physician's opinion, the ALJ should have contacted the doctor for clarification of the medical opinions if necessary. *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004)*; see also* SSR 96-2p, at 4 ("additional development . . . may provide the requisite support for a treating source's medical opinion that at first appeared to be lacking or may reconcile what at first appeared to be an inconsistency between a treating source's medical opinion and the other substantial evidence in the case record); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (remanding where ALJ should have sought more information); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) (remanding where ALJ discounted severity of claimant's arthritis without ordering new diagnostic tests). On

18

remand, the ALJ must cure the evidentiary gap created by the discounting of Dr. Robinson's opinions.

## B. AS A RESULT OF THE EVIDENTIARY GAP, SUBSTANTIAL EVIDENCE DOES NOT SUPPORT THE ALJ'S DETERMINATION THAT CLAIMANT CAN PERFORM SEDENTARY WORK.

The ALJ must explain how she reached her conclusions about a claimant's physical capabilities. *Briscoe ex rel. Taylor v .Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). The ALJ must identify some record basis to support the RFC finding. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). The ALJ is not allowed to "play doctor" by using her own opinions to fill an evidentiary gap in the record. *See Blakes*, 331 F.3d at 570. As discussed above, the ALJ created a gap in the medical evidence in not affording Dr. Robinson's opinions significant weight and must either ask Dr. Robinson for more information or obtain outside evaluations of Claimant's functional capabilities.

Claimant argues that the ALJ did not identify any medical evidence that Claimant can perform sedentary work. Claimant also argues that because the ALJ rejected the opinion of Dr. Robinson, the ALJ did not rely on any physician's opinion in determining the RFC. Claimant is correct that the ALJ did not rely on the opinions of any physicians to support her RFC determination, and therefore the disability outcome, in her decision.

In *Suide v. Astrue*, the Seventh Circuit found that a remand was necessary where an ALJ rejected a treating source's opinion, did not discuss the weight given to any other medical reports, and the record that remained did not support the ALJ's RFC determination. *Suide v. Astrue*, 371 Fed. App'x. 684, 689-90 (7th Cir. 2010). The case at bar is strikingly

similar: the ALJ declined to give the treating physician's opinion any significant weight and did not rely on or refer to any other medical opinions. The evidentiary deficit results in a lack of substantial evidence to support the ALJ's assessment of Claimant's ability to perform sedentary work.

**C.      ON REMAND THE ALJ SHOULD REVISIT THE RFC AND DISCUSS, IN COMPLIANCE WITH SSR 96-8p, WHY CLAIMANT'S REPORTED SYMPTOMS CAN OR CANNOT BE ACCEPTED AS CONSISTENT WITH THE MEDICAL AND OTHER EVIDENCE.**

Social Security Ruling 96-8p states that a determination of a claimant's RFC must "include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374181, at * 7. The ALJ is not free to accept or reject an individual's complaints solely on the basis of personal observation. *Id.*

The ALJ did not necessarily fail to properly analyze Claimant's complaints of fatigue, headaches, and dizziness. Instead, after consideration of the evidence, the ALJ concluded that the mild chest x-ray, the cardiac Doppler, the sleep study test results, and Claimant's daily activities of living indicate that Claimant's reported functional limitations cannot be accepted as consistent with the medical and other evidence, as required by SSR 96-8p. R.22-23. The ALJ addressed the medical evidence related to Claimant's complaints of fatigue and dizziness and determined that the medical evidence did not support Claimant's allegations. R. 23. This is not the same as failing to analyze those complaints entirely. *Compare Dogan v. Astrue*, 751 F. Supp. 2d 1029, 1046 (N.D. Ind. 2010) (the ALJ failed to discuss the

20

claimant's fatigue entirely); *Martinez v. Astrue*, 2009 WL 4611415, *12 (N.D. Ind. Nov. 30, 2009) (the ALJ failed to address the claimant's alleged need to lie down and erred in evaluating the claimant's credibility on similar points). In the case at bar, the ALJ analyzed both the complaints of Claimant as well as the medical evidence of record.

However, the Court has already found that on remand the ALJ is required to cure an evidentiary deficit by recontacting Dr. Robinson or seeking additional medical opinions. On remand, the ALJ must use any additional medical information obtained to reevaluate Claimant's RFC, which will necessarily involve a discussion of why reported symptom-related functional limitations—including fatigue, headaches, and dizziness—either can or cannot be "accepted as consistent with the medical and other evidence." SSR 96-8p.

## D.     THE ALJ'S CREDIBILITY FINDING WAS NOT "PATENTLY WRONG."

When faced with a claimant alleging subjective pain symptoms, an ALJ must evaluate the credibility of a claimant's testimony about her pain. SSR 96-7p. The ALJ must consider testimony in light of the entire record and be "sufficiently specific" as to the reasons for her credibility determination. *Id.* Since the ALJ is in the best position to observe a witness, however, her credibility finding will not be overturned as long as it has some support in the record. *Dixon v. Massanari*, 270 F.3d 1171, 1178-89 (7th Cir. 2001). Credibility determinations of the ALJ are given particular weight and will be reversed only if the claimant can show it was "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). A lack of medical testimony in the record supporting a claimant's subjective complaints of pain may be probative of a claimant's credibility. *Id.*

The ALJ stated that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." R. 22. Claimant argues that this statement puts the credibility determination after the RFC determination, which turns the process on its head. Indeed, the ALJ used the exact template that was the subject of a recent Seventh Circuit admonishment that "[t]he Social Security Administration had better take a close look at the utility and intelligibility of its 'templates.'" *Bjornson v. Astrue*, No. 11-2422, 2012 U.S. App. LEXIS 1790, at * 15 (7th Cir. 2012).

However, rather than stop with the template recitation, as in *Brindisi v. Barnhart*, 315 F.3d 783, 787-88 (7th Cir. 2003) and *Bjornson*, 2012 U.S. App. LEXIS 1790, the ALJ in this case went on to explain why she did not find Claimant's testimony regarding her alleged symptoms to be entirely credible. R. 22. The ALJ found that Claimant's testimony regarding her daily activities of living belied her alleged difficulties. R. 23. The ALJ noted that Claimant complained about bad balance during the hearing, but that she "ambulated well without an assistive device." R. 22. The ALJ further noted that Claimant can do activities of daily living, use public transportation, and care for her mother by preparing her meals and dispensing her medications. R. 22-23. Claimant argues that the ALJ failed to consider alleged limitations on these activities, but those limitations are found only in the Activities of Daily Living Questionnaire that Claimant completed in 2006 and she did not mention them during the 2009 hearing. R. 124. At the hearing, Claimant testified that she takes the bus,

pushes the cart when she goes grocery shopping, washes dishes, does the laundry, does a little vacuuming, and takes out the garbage.  R. 38-39.  The ALJ observed that Claimant also attends church and Bible study regularly twice a week, which the ALJ concluded was inconsistent with Claimant's alleged difficulties in maintaining concentration, persistence, or pace.  R. 23.  In light of the ALJ's consideration of Claimant's testimony and Claimant's minimal objective and diagnostic findings, the Court cannot say that the ALJ's credibility determination was "patently wrong."  Therefore, the ALJ's credibility determination is upheld.

**E. IN LIGHT OF THE REMAND, THE ALJ SHOULD FOLLOW THE CORRECT MEDICAL-VOCATIONAL GUIDELINE RULE TO DETERMINE WHETHER CLAIMANT IS DISABLED.**

**1. The ALJ Applied the Wrong Age Category When Considering Claimant's Age As A Vocational Factor.**

At the fifth step of the process, the Commissioner must determine whether a significant number of jobs exist which Claimant can perform given her limitations. *Craft*, 539 F.3d at 674. The Commissioner will consider Claimant's age as a vocational factor that affects Claimant's ability to adjust to other work. 20 C.F.R. § 404.1563(a).

For purposes of the Medical-Vocational Guidelines, a claimant's age on the day of the ALJ's decision is the relevant age. *See, e.g.*, *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989); *Jones v. Astrue*, No. 1:07-cv-0698-DFH-WTL 2008 U.S. Dist. LEXIS 31103, at *39-40 (S.D. Ind. Apr. 14, 2008). As of the date of the ALJ's decision, May 14, 2009, Claimant was fifty-six years old. R. 25, 105. An individual who is age 55 or older is considered a person of "advanced age." 20 C.F.R. § 404.1563(e). The ALJ used Claimant's age on the alleged onset date, at which time she was fifty-four years old, and therefore categorized her as "closely approaching advanced age." Claimant argues that this erroneous categorization materially impacted the ALJ's disability determination.

The Medical-Vocational Guidelines, 20 C.F.R., Part 404, Subpart P, App. 2, indicate that an individual who is "closely approaching advanced age" with limited education who has skilled or semiskilled transferable skills is not disabled within the regulations. *Id.* Rule 201.11. The same guidelines instruct that an individual of "advanced age" with limited

education who has skilled or semiskilled transferable skills, is not disabled as long as very little, if any, vocational adjustment would be required for a particular occupation into which the claimant's skills are transferable. *Id.* Rule 201.00(f). Thus, "In order to find transferability of skills to skilled sedentary work for individuals who are of advanced age (55 and over), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." *Id.* Similarly, the Social Security Regulation addressing skill requirements states:

> If you are of advanced age and you have a severe impairment(s) that limits you to no more than sedentary work, we will find that you have skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or industry.

20 C.F.R. § 404.1568(d)(4).

Thus, the difference between "approaching advanced age" and "advanced age" is that for individuals of "advanced age" the new jobs must require very little vocational adjustment. It is this finding that Claimant argues the ALJ failed to make and was material to the outcome of the case. When assessing Claimant's transferability of skills, the ALJ incorrectly cited the Medical-Vocational Rule 201.11 which is for claimants "closely approaching advanced age" rather than Rule 201.00 which is for individuals of "advanced age." R. 25.

Claimant correctly argues that the ALJ failed to make the requisite finding that the jobs proposed by the VE would require "very little vocational adjustment." The ALJ found that Claimant had acquired the following skills from past relevant work as a cafeteria cook,

teacher aide, and an administrative clerk: verbal communication, numerics knowledge, record keeping, and providing information. R. 24. The ALJ relied on the VE's testimony and noted that these work skills are transferable to other occupations with jobs existing in significant numbers in the national economy. *Id.* Specifically, the VE testified that Claimant had acquired skills for verbal and numerical recording, record keeping, and "information given," which would be transferrable to sedentary and semiskilled jobs such as hospital admitting clerks, appointment clerks, and diet clerks. R. 50. The VE further testified that "very little" vocational adjustment would be required because the jobs were all rated as the "highest transferrable" and would require "just familiarity with the job." *Id.*

The record may support the conclusion that very little, if any, vocational adjustment would be required of Claimant. The fact remains, however, that the ALJ was operating within the wrong guideline rule. The Court may not make any assumptions, based on the VE's testimony, about vocational adjustment where the ALJ did not make the requisite finding in her opinion. *Abbott v. Astrue*, 391 F. App'x. 554, 558 (7th Cir. 2010) ("The transferability of skills is a determination entrusted to the ALJ, not the VE, and we review the actual reasons given by the ALJ without speculating about what the ALJ might have considered. Therefore, we remand the case so that the ALJ can identify Abbott's acquired work skills and explain why he would need to make 'very little, if any, vocational adjustment' to a different job.") (internal citations omitted). Particularly in light of the remand, the Court directs the ALJ to use the appropriate age category for Claimant as a "person of advanced age" when considering Claimant's age as a vocational factor and to

26

make a specific determination as to whether "very little vocational adjustment would be required" for the jobs identified by the ALJ as those that Claimant can perform.

### 2. The ALJ's Finding that Claimant Possesses Transferable Skills Was Not In Error.

As discussed, for individuals of both advanced age and approaching advanced age, if a claimant has a limited education, is restricted to sedentary work, and is unable to perform past work—as Claimant is—a finding of disabled is appropriate unless the individual has transferable skills that require little if any vocational adjustment. Here, the ALJ found that Claimant has transferable skills. R. 24.

Claimant argues that the transferable skills identified by the ALJ were not actually skills as defined by the regulation. The Social Security Administration regulations provide that transferable skills "depends largely on the similarity of occupationally significant work activities among different jobs." 20 C.F.R. § 404.1568(d)(1)-(3). Furthermore, transferability is most probable and meaningful among jobs in which: (i) the same or a lesser degree of skill is required; (ii) the same or similar tools and machines are used; and (iii) the same or similar raw materials, products, processes, or services are involved. *Id.* A complete similarity of all three factors is not necessary for transferability. *Id.* Social Security Ruling 82-41 states that a skill is "knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level." Thus, "independence of judgment" and "responsibility for a work product" do not constitute

particular transferable skills. *Villano v. Astrue*, 556 F.3d 558 (7th Cir. 2009) (finding that judgment is too vague to constitute such a skill); *Draegert v. Barnhart*, 311 F.3d 468, 475 (2nd Cir. 2002) (determining that "transferable skill" requires more than "mere judgment" and means "learned abilities which combine knowledge with coordinated physical movements, such as operating a typewrite, or a learned mental discipline, or an area of expertise").

Here, the ALJ did not rely on an assertion that Claimant's skills are simply judgment or generalized responsibilities for a work product, nor did the ALJ omit any identification of the specific skills Claimant had acquired. Instead, the ALJ relied on the VE's testimony that Claimant possessed specific transferable skills, such as verbal and numerical recording and record keeping knowledge, acquired from her past work experience. R. 50. The ALJ explicitly identified the skills that Claimant had acquired from past relevant work based on the expert testimony offered at trial. R. 24. This was not in error.

## IV. CONCLUSION

For the reasons set forth in this opinion, the Court grants Claimant's motion to reverse the decision of the Commissioner, denies the Commissioner's motion to affirm the Commissioner's decision, and remands to the Social Security Administration for further proceedings consistent with this opinion.

**SO ORDERED THIS 2nd DAY OF APRIL, 2012.**

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Barry A. Schultz
The Law Offices of Barry A. Schultz, P.C.
1601 Sherman Avenue, Suite 510
Evanston, IL 60201

**Counsel for Plaintiff**

David R. Lidow
Assistant United States Attorney
219 South Dearborn Street
Chicago, IL 60604

Luke F. Woltering
Assistant Regional Counsel
Social Security Administration
200 West Adams Street, Suite 3000
Chicago, IL 60606

**Counsel for Defendant**